[Civ. No. 24588. Second Dist., Div. Three. Oct. 20, 1960.]

FREDERICK LAVELL, Respondent, v. THE ADOPTION
INSTITUTE (a Corporation), Appellant.

Gordon, Knapp, Gill & Hibbert and B. Richard Marsh for Appellant.

No appearance for Respondent.

SHINN, P. J.—Frederick Lavell brought an action against The Adoption Institute, a California corporation, seeking custody of a child named Baby Lavell who was in the custody of the institute which answered the complaint, alleging its right to custody of the baby on the ground that its mother Mary Kristek, a single person, had released the baby to the institute. The judgment declared that plaintiff is entitled to custody of the child, and the institute has appealed.

In the trial the material issue was whether the child was legitimate, in which event, under the circumstances in evidence, the consent of both its parents to adoption would be required (Civ. Code, § 224), or illegitimate, in which event the consent of the mother alone would have been sufficient (Civ. Code, § 200). The facts were stipulated as follows: "MR. ABELES: . . . Frederick Lavell commenced living with Mary Kristek in September of 1957 in the State of Michigan; at that time Mr. Lavell was married to someone other than Mary Kristek; said marriage being terminated by divorce in Michigan in December, 1957; One child, Frederick Lavell, the Third, was born to the union of Frederick Lavell and Mary Kristek on the 20th of July, 1958, in the State of Michigan; The parties, that is, Frederick Lavell and Mary Kristek, together, moved to California in February of 1959; at the time of the movement to California, Mary Kristek was pregnant with a child, which was delivered on the 19th of July, 1959, in Los Angeles County; The parties, that is, Frederick Lavell and Mary Kristek, again, lived together continuously as husband and wife from September, 1957, up to July 11, 1959; at all times while living together they represented themselves to the public as husband and wife; the parties never took part in a marriage ceremony in any state; On July 11, 1959 Mary Kristek left the home of Frederick Lavell with Frederick Lavell, the Second,—the first child that had been born to the parties; and without the prior knowledge of Frederick Lavell, Baby Boy Lavell was born to Mary Kristek on the 19th of July, 1959, and placed immediately in the care

of The Adoption Institute by Mary Kristek; Soon after the birth of Baby Lavell, Mary Kristek alone relinquished this child for an adoption as a single woman; this relinquishment in the form prescribed for single relinquishments was duly filed with the Department of Social Welfare on the 4th of August, 1959; and thereupon this child, Baby Lavell, was placed in the hands of prospective adopting parents; Frederick Lavell upon the departure of Mary Kristek made diligent search to attempt to ascertain her whereabouts and was unsuccessful initially; he did not learn of the whereabouts of Mary Kristek until the first part of August, at which time Mary Kristek and Frederick Lavell, the Third, were both residing in the State of Michigan; Frederick Lavell then returned to Michigan and commenced an action there to recover the custody of both children; At the time that he returned to Michigan he filed an affidavit or completed an affidavit acknowledging paternity of both Frederick Lavell, the Third, and Baby Lavell, the second child; At the time that he was in the State of Michigan he learned of the whereabouts of the second child, Baby Lavell, and returned to California; He thereupon made demand of the child upon The Adoption Institute; and upon the refusal of The Adoption Institute to deliver the child to him he commenced the present action; Further stipulated, that Frederick Lavell has hired a couple and has secured a house in which he would propose to care for the child should custody be awarded to him; There are no facts presently known to either party which would indicate unfitness of any of the parties to the action; Frederick Lavell tendered payment for doctor bills for—in connection with the delivery of the child; said payments were, as I understand it, accepted initially by the doctor, then returned to Frederick Lavell; Further stipulated, that if Mr. Lavell were present in court and sworn he would testify that since the birth of the second child, Baby Lavell, he has requested Mary Kristek to marry him, and she has refused; and it is his desire to legitimate the second child, Baby Lavell. MR. MARSH: So stipulated.''

The facts stipulated were carried into the court's findings. The court also found that plaintiff kept the mother in his home until a few days before the child's birth; the relinquishment of the child for adoption by the mother was without the consent or approval of plaintiff and was in fact in opposition to his expressed desire. The court found further ''That the plaintiff, while living with the natural mother of

the unborn child and the first child of the plaintiff, was a part of a family unit consisting of the four persons.'' It was found that the father has made every effort to receive the child into his home as his own; ''Plaintiff further has filed an acknowledgment of his parenthood of the child in Michigan inasmuch as the child was conceived in Michigan, said acknowledgment being in the form specified by the statutes of the State of Michigan for legitimation of an illegitimate child by its natural father''; also ''Plaintiff is a fit and proper person to be awarded the care, custody, and control of the aforesaid Baby Lavell.''

Appellant states the question on the appeal as follows: ''May the legitimation of a child under Civil Code, Section 230 be accomplished prior to its birth?'' Although the point has not been passed upon in any case that has come to our attention, our answer must be in the affirmative.

Section 29 of the Civil Code reads in part as follows: ''A child conceived, but not yet born, is to be deemed an existing person, so far as may be necessary for its interests in the event of its subsequent birth.'' The substance of appellant's argument on this point is stated as follows: ''To hold that Baby Lavell was an existing person prior to his birth will mean that his custody, with all that implies, will be with his natural father, a single man. It will mean that he will lose the opportunity, so far as we know, to be raised as a child of a married couple. This would be an application of the statute to a situation far removed from those where the Courts have been concerned with affording a child financial compensation.''

The contention appears to be that it would not be necessary, in the interest of the child, that it be adopted by its father. We do not doubt that it is in the interest of any child to be reared by a married couple. But we believe that the primary interest and right of an unborn child of unwed parents is to acquire the status of a legitimate child. We doubt that it has ever been questioned that the welfare of a child of parents who are well qualified to fulfill, and have fulfilled, the obligation of parenthood will be better served by its being reared by its natural parents than by adoptive parents.

Adoption by strangers is a beneficent substitute for the custody of natural parents, but it is a measure that is not to be employed when the natural parents are qualified, able and willing to bear their responsibilities.

The fact that the father is single cannot deprive the child of the right of legitimation. The law permits the adop-

tion of illegitimate children by single persons and we would assume that most fathers of illegitimate children are unmarried men. Moreover, it cannot be assumed that the baby, if placed in the custody of its father, will be deprived of the advantage of being reared by a married couple. The facts before the court would justify a belief that it is not the fault of the father that he and the baby's mother remain unwed. It was a reasonable inference that it is the mother who has been unwilling to marry the child's father. Plaintiff has manifested great interest in the child and has shown himself to be conscious of his responsibility as a father. Who can say that the interests of the two children and the desires of their parents may not eventually lead to marriage?

 But be that as it may, we are convinced that an unborn child of unwed parents may be adopted by its father. It is deemed an existing person ''as far as may be necessary for its interests,'' most important of which is the right of legitimation and to have the security of a father's care and support.

Section 230 of the Civil Code reads in part as follows: ''The father of an illegitimate child, by publicly acknowledging it as his own, receiving it as such, with the consent of his wife, if he is married, into his family, and otherwise treating it as if it were a legitimate child, thereby adopts it as such; and such child is thereupon deemed for all purposes legitimate from the time of its birth.'' Appellant appears to contend that the requirements of this section cannot be met before the child has been given birth. We cannot agree.

 We hold that under section 29, the unborn child of unwed parents is an existing person for the purpose of adoption and we believe is as capable of being received into the family of the father, and to be as much a part of the family as an unborn child of married parents. The child must be treated as if it were legitimate, but this requirement may not be construed as applying only to a child after its birth. It is not questioned that respondent provided a home for the child's mother and supported her until their separation, shortly before the birth of the child. Certainly he did not deny parenthood, nor did he in any manner treat it otherwise than as a legitimate child. He has not neglected the child or failed in any duty toward it. If it should be held that such a child is not subject to adoption by its father until after it is born, an unknown, but possibly considerable number of children of unwed parents might be forever barred from legitimation. We could suppose a case where the father up until the time

the child was born had maintained the mother and unborn child in his home, had acknowledged his parenthood and done everything in his power to treat the child as a legitimate child would have been treated and yet if, through death, incompetency or other misfortune he was unable thereafter to meet the requirements of section 230, the child would forever remain illegitimate. We do not believe it would be reasonable, and it certainly would be most unfair to children in those circumstances, to hold that the efforts the father had made, in every way in which it was possible for him to make efforts to give the child the status of legitimacy, should go for naught.

The judgment is affirmed.

Vallée, J., and Ford, J., concurred.