[L. A. No. 26567. In Bank. Jan. 22, 1962.]

RALPH BENSON, Petitioner, v. THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent; THE PEOPLE, Real Party in Interest.

Alan Ross for Petitioner.

No appearance for Respondent.

William B. McKesson, District Attorney, Harry Wood and Robert J. Lord, Deputy District Attorneys, for Real Party in Interest.

TRAYNOR, J.—Petitioner seeks a writ of prohibition to restrain the Superior Court of Los Angeles County from taking further proceedings against him under a count of an indictment charging him with soliciting perjured testimony in violation of Penal Code section 653f.*

The Department of Social Welfare had been conducting an investigation of adoption practices in Los Angeles County. Mrs. Evelyn Scheingold, an investigator, visited petitioner, an attorney, and told him that she was pregnant, that she wished to have the child adopted, and that the child's father was

---

*Section 653f of the Penal Code provides: ''Every person who solicits another . . . to commit or join in the commission of . . . perjury . . . is punishable by imprisonment in the county jail not longer than one year or in the state prison not longer than five years, or by a fine of not more than five thousand dollars. Such offense must be proved by the testimony of two witnesses, or of one witness and corroborating circumstances.''

unknown, since she had been living with her husband and another man. ▮ The husband's consent would normally be necessary for an adoption, for a legitimate child "cannot be adopted without the consent of its parents. . . ." (Civ. Code, §§ 224, 226.) To make the husband's consent unnecessary, the wife must show that she is not cohabiting with him (Code Civ. Proc., § 1962, subd. 5) and must rebut the statutory presumptions favoring the child's legitimacy. (Civ. Code, §§ 193, 194; Code Civ. Proc., § 1963, subd. 31.) ▮ In a custody proceeding the wife may present testimony establishing that she has lived apart from her husband for a sufficient length of time to rebut the presumptions that the husband is the child's father.

▮ Mrs. Scheingold testified before the grand jury that in contemplation of a custody proceeding petitioner said to her: " 'There are ways of getting around the law, and I'm the only lawyer in town who knows how to do it.' He said, 'I will help you get a witness to establish that your husband could not have been the father. I know how to get around these Courts.' " She testified further: "I said, 'Mr. Benson, my big problem is how I am going to get a witness to testify that I have not been with my husband for a period of time.'

"He said, 'You have a girl friend here, haven't you?'

"I said, 'Yes, but I am afraid she may say the wrong things. She's pretty nervous.'

"Mr. Benson said, 'Don't worry. I'll talk to her. She will say the right things.' "

Subsequently, Mrs. Scheingold introduced Miss Terri Pallato, a fellow investigator, to petitioner as a friend. Mrs. Scheingold testified that Miss Pallato, "told Mr. Benson that she had never seen my husband, that she did not know him, that she did not know whether or not this was his baby, but she was willing to swear in the affirmative to both of these points. . . .

"Mr. Benson assured her that there was nothing to it. He said that Terri and I would. go into the Judge's chambers and he would ask whether or not she knew my husband and whether or not this could be his baby, and she would answer that this could not be his baby.

" . . . . . . . . . . . .

"Mr. Benson said that Terri should say that she knew my husband, but that I had been living out here in Los Angeles for over 11 months and this could not be his child."

Miss Pallato testified: "He said, 'All we do is we three,

you, her and me, will walk into the Judge's chambers and he will ask you those two questions.'

"Now, he didn't repeat the questions, but he meant, 'Do you know Evelyn's husband' and 'Do you know that this is not his baby?'

"And he said, 'All you do is answer yes to both those questions.'

"So I said, 'Well, I'm terribly nervous about it, Mr. Benson.' I said, 'I don't do this every day of my life. . . .'

"He said, 'Look, there's absolutely nothing to it.' "

There was thus probable cause to believe that petitioner solicited false testimony. The testimony solicited related to the very purpose of the custody proceeding, and it is immaterial that the proceeding was not pending at the time of the solicitation.

Petitioner contends, however, that he could not have committed the crime of solicitation since the perjury would not have occurred because the fact that Mrs. Scheingold was an investigator who was not even pregnant would have precluded a custody proceeding. Petitioner's alleged acts nevertheless fall clearly within Penal Code section 653f.

■ That section is designed not only to prevent solicitations from resulting in the commission of the crimes solicited, but to protect "inhabitants of this state from being exposed to inducement to commit or join in the commission of the crimes specified. . . ." (*People* v. *Burt,* 45 Cal.2d 311, 314 [288 P.2d 503, 51 A.L.R.2d 948].) ■ "Purposeful solicitation presents dangers calling for preventive intervention and is sufficiently indicative of a disposition towards criminal activity to call for liability. Moreover, the fortuity that the person solicited does not agree to commit the incited crime plainly should not relieve the solicitor of liability. . . ." (Model Penal Code, § 5.02, comment [Tent. Draft No. 10, 1960] 82.) ■ The act solicited must, of course, be criminal. If the solicitor believes that the act can be committed "it is immaterial that the crime urged is not possible of fulfilment at the time when the words are spoken" or becomes impossible at a later time. (Williams, Criminal Law § 136 p. 468, § 137 p. 468; see *People* v. *Rojas,* 55 Cal.2d 252, 258 [10 Cal.Rptr. 465, 358 P.2d 921]; *People* v. *Camodeca,* 52 Cal.2d 142, 145-147 [338 P.2d 903]; Model Penal Code, § 5.01(1)(a), comment [Tent. Draft No. 10, 1960] 31.) This rule was clearly enunciated as early as 1864 in *Commonwealth* v. *Jacobs,* 91 Mass. (9 Allen) 274, 275. In that case a statute

made criminal the solicitation of another to leave the state to offer himself as a draft substitute for the solicitor. The court rejected defendant's contention that since the person solicited, without the solicitor's knowledge, had been rejected as physically unfit by the army before the solicitation, the impossibility of completing the act barred a conviction. (See *People* v. *Dessús*, 12 Porto Rico 330, 341.) ▪ Solicitation itself is the evil prohibited by the Legislature, and prosecution therefor is particularly appropriate for the very case in which the crime solicited does not take place.

The alternative writ heretofore issued is discharged, and the petition for the peremptory writ is denied.

Gibson, C. J., Schauer, J., McComb, J., Peters, J., White, J., and Dooling, J., concurred.

