[Civ. No. 26348. Second Dist., Div. Two. Apr. 30, 1963.]

Adoption of VERA KEPOLA SARKISSIAN, a Minor. FRANK PATSY BELLO et al., Plaintiffs and Appellants, v. LOS ANGELES COUNTY BUREAU OF ADOPTIONS et al., Defendants and Respondents.

Rose, Leavitt & Fendler, William Bland Brodnax and David Keene Leavitt for Plaintiffs and Appellants.

Harold W. Kennedy, County Counsel, Jean Louise Waller and Raymond W. Schneider, Deputy County Counsel, for Defendants and Respondents.

HERNDON, J.—By their appeal from the judgment denying their petition to adopt the minor child here involved, appellants present for our determination the narrow question whether the consent of the natural father is required in an adoption proceeding involving a child which has been legitimatized by the natural father in conformity with the provisions of sections 215 and 230[1] of the Civil Code.

The briefs before us indicate that the facts as stated in the reports of the Los Angeles County Bureau of Adoptions made to the trial court are accepted and are not in dispute. These reports disclose that the mother of the subject child has lived with its father since September 1958, although they have had "frequent separations of a day or two to several weeks." On June 13, 1959, a child, not the subject child, was born as a result of this relationship. The subject child was born August 5, 1960. A third child was expected in September 1961.

However, from February 5, 1949, to March 9, 1960, the mother was legally married to one Paul Ah Yo who has resided throughout in Hawaii.[2] It is therefore apparent that

---

[1] Civil Code section 215 provides: "A child born before wedlock becomes legitimate by the subsequent marriage of its parents."

Civil Code section 230 provides: "The father of an illegitimate child, by publicly acknowledging it as his own, receiving it as such, with the consent of his wife, if he is married, into his family, and otherwise treating it as if it were a legitimate child, thereby adopts it as such; and such child is thereupon deemed for all purposes legitimate from the time of its birth. The foregoing provisions of this Chapter do not apply to such an adoption."

[2] The rights, if any, of Paul Ah Yo in regard this adoption based upon

the first two children of the natural parents were born "illegitimate" in the sense that no valid marriage relationship existed between the parents at the time the children were conceived or born.

The mother and father continued to live together after the birth of the subject child until December, 1960, when the father lost his job and could not obtain another. The parents quarreled and the mother and the two children moved in with a woman who previously had acted as her babysitter. The father lived on unemployment insurance benefits for several months, contributing a part of each payment to the mother. He continued to see the mother and they finally decided "to resolve their differences, legalize their relationship and make every effort to become stable, responsible citizens and to provide a secure home environment for their children." The father did not know that the minor had been placed for adoption before he married the mother on May 17, 1961.

During the period while the mother was living with her former babysitter, the latter advised the mother, who was then employed, that she was no longer physically able to care for an infant and that she had allowed her daughter, one of the appellants herein, to take the subject child home with her for a few days. The daughter and her husband became interested in adopting the infant and the mother was "persuaded" that she and the father "could not offer any future for [her]." On May 3, 1961, the mother was interviewed by a representative of the Los Angeles County Bureau of Adoptions, and, claiming sole custody of the subject minor under sections 200 and 224[3] of the Civil Code, she freely and willingly signed her consent to the adoption.

---

"presumptive fatherhood" are not here involved, for it is established by the evidence and conceded by all the parties that any rebuttable presumptions in this regard have been overcome. (Cf. *Benson* v. *Superior Court*, 57 Cal.2d 240, 242 [18 Cal.Rptr. 516, 368 P.2d 116].) Actually, Paul Ah Yo signed a consent as "presumptive father" before a notary in Hawaii on June 26, 1961, as provided by section 226, Civil Code, but this consent does not appear to have been "accepted" by the Los Angeles Bureau of Adoptions, and, in any event, was not executed until after the natural father had signed a "Refusal to Consent" and the mother had moved to withdraw her consent previously given. Further, we are here concerned with "consents" rather than "relinquishments" and hence are not faced with any of the problems before the court in the recent case of *Adoption of Graham*, 58 Cal.2d 899 [27 Cal.Rptr. 163, 377 P.2d 275].

[3]Civil Code, section 200, provides: "The mother of an illegitimate unmarried minor is entitled to its custody, services, and earnings."

Civil Code, section 224, provides in part: "A legitimate child cannot be adopted without the consent of its parents if living; . . . nor an illegitimate child without the consent of its mother if living; . . ."

Following the marriage of the mother and father on May 17, 1961, they resumed cohabitation, and the father learned that the child was not being cared for by friends, but had been placed for adoption. On May 24, 1961, he signed a "Refusal to Consent to Adoption," and, on June 19, 1961, the mother filed a petition in the adoption proceeding seeking to withdraw her consent upon the ground that it had been given while she was "emotionally upset and under strong undue influences." This petition further alleged that "at the time of signing said consent the natural father of [the subject child], had no knowledge thereof and did not join therein and that said minor was then said father's legitimate issue by way of public acknowledgement."

Appellants' petition for adoption and the mother's petition to withdraw her consent came on for joint hearing on September 7, 1961. In their reports the Los Angeles County Bureau of Adoptions took no position on the mother's petition to withdraw her consent, but indicated their belief that the consent of the father should be required under the circumstances. Although not required for the determination of the specific issue presented, the reports were highly critical of the character of the father, as reflected by his record of criminal activities and his alcoholic excesses and recommended that the child be committed to the bureau in accordance with section 226c of the Civil Code. Following the hearing, the court denied appellants' petition for adoption but allowed them to have temporary custody of the child. The mother's petition to withdraw consent was placed off calendar.

Appellants rest their entire appeal upon the proposition that the subsequent marriage of the parents of an illegitimate child does not deprive the court of jurisdiction to proceed with an adoption previously consented to by the mother, notwithstanding the father's failure or refusal to consent, citing *Adoption of Laws,* 201 Cal.App.2d 494 [20 Cal. Rptr. 64].

Respondents, on the other hand, rely upon *Lavell* v. *Adoption Institute,* 185 Cal.App.2d 557 [8 Cal.Rptr. 367], which held the consent of the natural father was required where he had "legitimated" the child under Civil Code section 230 prior to its birth. The *Lavell* case was expressly distinguished on its facts by the court in *Adoption of Laws, supra,* as not being applicable to the facts presented therein. Thus, respondents point out that the trial court in the instant case made the following express finding of fact:

"That [the natural parents of the subject child] lived together as husband and wife from a time prior to the conception of this minor child until after the birth of this child. The child, prior to her birth, was treated as if she were legitimate and [the father] provided a home for the child's mother and provided some support for her and did not deny parenthood of this child nor in any manner treat the said minor otherwise than as a legitimate child."

Since there is substantial evidence to support this finding and the sufficiency of the evidence is not questioned by appellants, it is clear that the rule in the *Lavell* case must prevail. In *Adoption of Laws, supra,* 201 Cal.App.2d 494, relied upon by appellants, the natural father was married to, and living with, another woman at the time the subject child was born on October 27, 1960. Although his marriage to the other party was annulled on February 6, 1961, he had not separated from her until December 1960. The child had been placed with the parties petitioning for its adoption upon its birth, and at no time was ever "received" into the father's family as required by the terms of section 230 of the Civil Code. Therefore, the only manner in which its legitimation could have been accomplished was by the subsequent marriage of the mother and father on April 27, 1961. (Civ. Code, § 215.) As the court in the *Laws* case therefore properly noted (p. 498):

"The facts in the case before us are clearly to be distinguished from those in the *Lavell* case [citation] since there can be no contention that any efforts were made by the father in this case to legitimate the child either prior to its birth or subsequent thereto until the marriage of the natural parents of the child some eight months after the child's birth and six months after the natural mother's consent to the adoption. For this court to hold that the natural parents of a child, previously placed for adoption and relinquished by written consent of the mother, could, by their subsequent marriage, thereby deprive the court of its power to proceed with the adoption would be to open the door to practices which could conceivably discourage adopting parents from opening their hearts and homes to unwanted children and also subject them to the possibility of becoming the prey of designing persons.

"It is the cardinal rule of adoption proceedings that the court consider what is for the best interests of the child. [Citation.] Certainly the subsequent marriage of the nat-

ural parents of a child is a circumstance which should be considered by the court prior to the entry of a final decree of adoption; however, the marriage should in no way limit the court's jurisdiction to proceed."

Factually, the instant case and the *Lavell* case are almost identical except that the facts in the instant case provide an even stronger basis for the rule therein set forth in that here the father actually had accepted the child into his family *after its birth* and prior to the separation of the parties, and not merely *prior to its birth* as in the *Lavell* case. Even during the separation of the parties, the father continued to contribute something toward the support of the mother and his children and was unaware of the initiation of the adoption proceedings at the time he and the mother determined to legalize their own relationship. Therefore, although the child may have been born "illegitimate" in an abstract and technical sense, nonetheless it is clear that it had attained the "status" of a legitimate child prior to the unilateral and secret attempt by the mother to effect its adoption.

The natural father in *Adoption of Graham, supra,* 58 Cal.2d 899, did not assert his desire to have the custody of the subject child or to continue his parental relationship, but urged only that his right to consent to the adoption was essential notwithstanding a relinquishment previously given by the mother and the presumptive father. The following language of the *Graham* decision clearly shows the propriety of applying the rule of the *Lavell* case in the factual context presently being considered (p. 903):

"It is contended by the appellants that due to the retroactive effect of the [*nunc pro tunc*] final decree [the natural father's earlier] marriage had been terminated at a time prior to the births of the children; that he must be deemed to have been a single man; that [the natural father's former wife's] consent to the adoption and legitimation of the children by [the natural father] was, therefore, not required; that the children were thus the legitimate and adoptive children of [the natural father], he having satisfied all other requirements of section 230 of the Civil Code; and that the children could not be relinquished for adoption by others without his participation. (See Civ. Code, § 224.) If the contention with respect to the retroactive effect of the *nunc pro tunc* order is valid, *it is manifest that the appellants' conclusions would naturally follow therefrom.*" (Italics added.)

We are not here called upon to determine what rights,

if any, the natural father would have in a case in which the adoptive order became final during the separation of the parties, or where in some other manner he had been tardy or derelict in asserting his rights as a father during the course of the proceedings. We now determine only that, under such circumstances as are here presented, the consent of the father was a prerequisite to the pursuit and consummation of the adoption sought by appellants. ▮ If it should prove to be a fact that the natural parents are in some manner "unfit" to have the custody of the subject child, appropriate and available provisions of our law may be invoked to protect the best interests of the child. It is our view that reliance upon these laws is preferable to an order which would deprive the father of three children of his right to refuse his consent to the adoption of one of them.

The judgment is affirmed.

Fox, P. J., and Ashburn, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied June 26, 1963.

