[Crim. No. 8166. Second Dist., Div. One. Oct. 25, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. IRVING
MELVIN LITT, Defendant and Appellant.

544

Jack Corinblit for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Louis L. Selby, Deputy Attorney General, for Plaintiff and Respondent.

LILLIE, J.—Defendant was convicted of soliciting Martin Bryman to commit bribery in violation of section 653f, Penal Code. He appeals from the judgment; his purported appeal from the order denying motion for new trial is dismissed. (Pen. Code, § 1237; *People* v. *Eppers,* 205 Cal.App.2d 727 [23 Cal.Rptr. 222].)

Defendant neither testified nor offered evidence on his behalf; thus, the facts are essentially uncontroverted. In January 1961, defendant told Dietrich, a bar and restaurant owner, that he heard he had a license revocation proceeding pending against him for sale to a minor and he should have told him of it because he could have "got it fixed" so that he "wouldn't even have to go to court on it"; defendant introduced him to two "officers" saying they would "look into the matter." Dietrich wasn't interested; defendant told him to let him know if he ever got into trouble again and for a sum of money he "could take care" of the Department of Alcoholic Beverage Control (hereinafter referred to as ABC) and the Hollywood Police Station. Thereafter, Dietrich in-

formed the ABC and the police of this conversation and defendant's offer.

On May 8, 1961, Dietrich, who was again arrested, called defendant in accord with police instructions and in the presence of Sergeant Griffin. (This conversation and all of the following conversations between Dietrich and defendant, and Bryman and defendant, were recorded by police; a transcript of all recordings is part of the record before us.) Dietrich told defendant he had been picked up "for a minor"; defendant said he would talk to his friend in ABC and see what he could do, and it would cost about $1,500 to "fix" ABC and Hollywood Police Station, but because of his record it was doubtful he could help him so the matter would have to be disposed of quickly before the file went to Sacramento. The next day Dietrich told defendant he couldn't raise the money; defendant said he couldn't help him because of his priors—that neither Hollywood nor ABC would "touch it."

On July 19, 1961, around 10:15 a.m. Dietrich called defendant; police had previously supplied Dietrich with the name of "Martin Bryman" and instructed him what to say to defendant. Bryman, owner of M'Goo's Restaurant, agreed with police and ABC to cooperate in the investigation and consented to have a complaint filed against him.) Dietrich told defendant that Bryman owned M'Goo's, had a license to sell beer and wine and had been arrested for having alcohol on the premises; defendant appeared interested and said it would cost a "bundle"; Dietrich promised to contact Bryman and call him back. Later Dietrich called and gave defendant Bryman's address, telephone number and details of the incident; defendant said there was a "yard" (money) in it for Dietrich if he obtained the "loot." About 45 minutes later Bryman received a telephone call from defendant; defendant introduced himself as a friend of Dietrich and asked concerning the details, including the name of the arresting officer, and said he could "take care" of it—he was pretty sure "he could beat the ABC thing." Around 9:10 p.m. defendant called Bryman again and told him he could take care of the matter but would have to reach "high places." The next day (July 20), about 10:55 a.m., defendant called Bryman and told him it was all set, he could take care of the whole thing, it would have to be done quickly, would cost $2,000 but he thought he "could get them down to about seventeen," and would meet him at M'Goo's in 45 minutes to pick up the money. Police then gave Bry-

man $2,000; he put $300 in his pocket and $1,700 in an envelope. At 11:30 a.m. defendant arrived; Bryman took him into his office. Defendant told him: "they wanted two but would settle for seventeen." Bryman placed the $1,700 on the desk saying, "Here it is." Defendant put the money in his pocket and made a telephone call on, what Bryman could tell was, an outside line. Defendant dialed and asked for "Police Department"; he dialed again and said "City Hall, 45211"; he asked for 2524 and said "Dobrichan please." Defendant told Dobrichan, whom he called "Mike," "the best we could do is seventeen . . . yah he's [Bryman] got it right here"; reminded by Bryman that the money was to take care of both the ABC and criminal case, defendant told Dobrichan that it ($1,700) is for "the whole thing, right? . . . the number one and the number two." Officers, including Sergeant Griffin and a representative of ABC, who were in a back room, walked up and arrested defendant. Officer Griffin asked Bryman why he gave defendant $1,700; Bryman, in defendant's presence, said that defendant "was going to fix a case for him"; defendant said nothing. Defendant then, at the officer's request, took the money out of his pocket and gave it to him. Defendant admitted receiving calls from Dietrich and telling him "he would try to take care of Mr. Bryman's problem and try to fix his case," but said he had, in fact, no such intention, intended to take the $1,700 and later tell him he couldn't fix it and that it cost him $200 or $300 for his trouble. Later, defendant told Sergeant Griffin and a representative of ABC that he knew Mike Dobrichan and Bob Pignet, who had previously obtained criminal records of certain persons for him and others; that when Dietrich first called him about Bryman he informed Dobrichan; that he (Dobrichan) told him to call Bryman and see what he had to say; that later he talked to Dobrichan and a price of $2,000 was discussed; that the next day he told Pignet $2,000 was too much and he would probably ask him (Bryman) for less; that when he met Bryman at M'Goo's he called Dobrichan and told him "we had seventeen. 1700 . . . to take care of number one and number two," and Dobrichan said, "o.k."; that he knew he was at M'Goo's to "fix" Bryman's ABC and criminal case; and that he intended Bryman to think the money would "take care" of it, but the purpose in getting the $1,700 from him was a "con," that Bryman would have gotten his money back, and he hoped Bryman might give him $200 or $300 for his efforts.

Appellant claims that the information was defective

in that it did not charge the offense in the language of section 653f, did not identify any particular bribery statute, failed to identify any specific person whose official action was to be influenced, and was insufficient to give him notice of the offense charged.

■ Section 653f, Penal Code, makes it unlawful for one to "solicit[s] another to offer ... or join in the offer ... of a bribe. . . ." Under this section solicitation of one to offer a bribe is a crime separate and distinct from bribery or an attempt to bribe an official mentioned in the numerous penal sections cited by appellant. The offense proscribed by section 653f is solicitation (*Benson* v. *Superior Court*, 57 Cal.2d 240 [18 Cal.Rptr. 516, 368 P. 116] ; *People* v. *Rissman*, 154 Cal. App.2d 265 [316 P.2d 60]), not bribery; the information charges solicitation ; and the evidence fully proves the crime.

■ Defendant was charged with a ". . . violation of section 653f, Penal Code of California," in that on July 20, 1961, he "did wilfully, unlawfully and feloniously solicit another, to wit, Martin Bryman, to commit and join in the commission of the crime of Bribery." Thus, without substance is the claim that the information is defective because "no identification of the particular statute relied upon is even set forth" therein (A.O.B., p. 8); the one and only statute relied upon, and on which the charge is based, is specifically pleaded therein as "section 653f, Penal Code of California."

In *Benson* v. *Superior Court*, 57 Cal.2d 240 [18 Cal.Rptr. 516, 368 P.2d 116], the Supreme Court said concerning section 653f: "That section is designed not only to prevent solicitations from resulting in the commission of the crimes solicited, but to protect 'inhabitants of this state from being exposed to inducement to commit or join in the commission of the crimes specified. . . .' (*People* v. *Burt*, 45 Cal.2d 311, 314 [288 P.2d 503, 51 A.L.R.2d 948].) . . . *Solicitation itself is the evil prohibited by the Legislature*, . . ." (pp. 243, 244.) (Italics added.) Relative to the nature of the crime proscribed in the identical portion of section 653f, here involved, the court in *People* v. *Rissman*, 154 Cal.App.2d 265 [316 P.2d 60], pointed out: "When any person solicits another to offer or join in the offer of a bribe, the solicitor has committed the offense described in section 653f. (*People* v. *Woodward*, 136 Cal.App. 149, 151-152 [28 P.2d 36].) The gist of the offense is the *solicitation to offer or join in the offer of a bribe*, and not the commission of bribery. (*People* v. *Hum-*

*phrey,* 27 Cal.App.2d 631, 637 [81 P.2d 588]; *People* v. *Haley,* 102 Cal.App.2d 159, 164-165 [227 P.2d 48].)'' (P. 275.)

While the exact words of section 653f were not used to describe the offense at bar, the crime charged is identified by specific reference to the statute relied upon and contains language plainly equivalent to the section in describing the violation. The accusatory pleading complies with, and is sufficient under, the requirements of section 952, Penal Code. (*People* v. *Beesly,* 119 Cal.App. 82 [6 P.2d 114, 970].) Thus, in *People* v. *Shapiro,* 170 Cal.App.2d 468 [338 P.2d 963], defendant was charged in language almost identical with that at bar, with violating ''section 653f of the Penal Code in that he feloniously solicited the owner and manager to commit and join in the commission of the crime of bribery'' (p. 470.); likewise in *People* v. *Danielson,* 203 Cal.App.2d 498 [21 Cal.Rptr. 469], defendants were convicted of ''soliciting another to join in the crime of bribery, a violation of section 653f of the Penal Code. . . .'' (P. 500.) In neither case was objection raised to the sufficiency of the information, but inasmuch as the crimes were proved under section 653f and the convictions thereunder were affirmed, it appears that the language was adequate and sufficient to allege a violation of section 653f.

Defendant having been charged with a violation of the precise statute relied upon, which offense was thereafter specifically described as the felonious solicitation of Martin Bryman to commit bribery, we cannot agree with his claim that he was not given adequate notice of the offense charged. Moreover, the testimony at the preliminary hearing and the transcript thereof sufficiently informed him of the particular circumstances and persons involved to enable him to prepare a defense. (*People* v. *Roberts,* 40 Cal.2d 483 [254 P.2d 501].)

Without merit is his further contention that the official to have been influenced must be named in the pleading, for neither the language nor the intent of section 653f requires, or indeed, even contemplates, that any official be identified, and for good reason. The statute proscribes but the one offense—solicitation; its purpose is to prevent solicitations from resulting in the commission of certain crimes and to protect the public from exposure to inducements to commit them. (*Benson* v. *Superior Court,* 57 Cal.2d 240, 243 [18 Cal.Rptr. 516, 358 P.2d 116]; *People* v. *Burt,* 45 Cal.2d 311, 314 [288 P.2d 503, 51 A.L.R. 2d 948].) Thus, by requiring

the charge to identify the official for whom the offer of a bribe is solicited the purpose of the statute is defeated—one could easily avoid punishment under section 653f by deliberately concealing from the person he solicits the name of the person he hopes to influence, the result of which would encourage official corruption, subject members of the public to imposition by unscrupulous operators, cast a cloud of suspicion on innocent officials (where one is allowed to brag that certain official favors can be purchased, even though untrue, he has no real intention of trying to bribe anyone, and no official is actually involved), and promote destruction of the public image of honest government.

Appellant's reliance upon *People* v. *Ward,* 110 Cal. 369 [42 P. 894], is misplaced. The case was decided prior to the amendment of section 952, Penal Code; further, it involved, not solicitation of one to commit bribery, but the "crime of giving a bribe."

Finally, appellant claims that there is no evidence that he intended to influence an identified person in his official capacity; and that Bryman actually had not violated the law, had not been arrested and no charges were pending against him. He relied upon *Lichens* v. *Superior Court,* 181 Cal.App.2d 573 [5 Cal.Rptr. 539], and *People* v. *Longo,* 119 Cal.App.2d 416 [259 P.2d 53], both bribery cases.

Inasmuch as the offense charged is solicitation, not bribery, identity of the person for whom the bribe is solicited and his official capacity are not necessary elements; likewise not material is the fact that the person to be influenced may have no knowledge of the conduct of the accused and the person he solicits. (*People* v. *Megladdery,* 40 Cal.App.2d 748 [106 P.2d 84].) However, the evidence supports the reasonable inference that defendant actually intended to influence Mike Dobrichan, a police officer, and that Dobrichan did cooperate up to the time of defendant's arrest.

The nature of the crime necessarily requires caution on the part of the perpetrator in making his unlawful proposition; thus, the rule is that the language of the one soliciting need not always be explicit either as to the promise or thing promised, and the inference of an offer to bribe may be drawn from suggestive language (*People* v. *Vincilione,* 17 Cal.App. 513 [120 P. 438]); and his "intent may be gathered from the surrounding circumstances." (*People* v. *Rissman,* 154 Cal.App.2d 265, 275 [316 P.2d 60]; *People* v.

*Megladdery,* 40 Cal.App. 748 [106 P.2d 84].) ██ Here, however, proof of the intent of defendant to solicit Bryman to offer a bribe is uncontradicted—he told Dietrich it would cost Bryman a "bundle" to "fix" his ABC and criminal case; he told Bryman he could "take care" of "the whole thing" for $1,700; he told Dobrichan, whom he called at "City Hall" in Bryman's presence, that he had $1,700 from Bryman "for the whole thing"; and after his arrest defendant admitted that he told Dietrich "he would try ... to fix his [Bryman's] case," that he was in M'Goo's to "fix" Bryman's ABC and criminal case, and that he intended Bryman to think that his money would "take care" of it. Assuming this to be all the evidence shows (defendant did not choose to testify concerning his intent) the evidence supports a conviction under section 653f, for defendant's intentional act of soliciting Bryman to offer the money for what he (defendant) intended Bryman to believe was a bribe, is "the gist of the offense" (*People* v. *Rissman,* 154 Cal. App.2d 265, 275 [316 P.2d 60]), "the evil prohibited by the Legislature." (*Benson* v. *Superior Court,* 57 Cal.2d 240, 244 [18 Cal.Rptr. 516, 368 P.2d 116].)

However, the proof reflects much more than the "con" operation to which appellant admits; the inference is strong that defendant really intended to try to "fix," or to "fix," Bryman's case and solicited from him, and took, his $1,700 for that purpose. There is no doubt that two police officers were actively involved. In Bryman's presence, upon receiving the $1700, defendant called "Police Department" at the "City Hall" number and talked to Dobrichan advising him he had the $1,700 "for the whole thing"; it is obvious from the conversation that he had previously discussed with Dobrichan Bryman's case and the amount of money, and defendant's admission bears this out. Immediately upon his arrest, before he had time to think of a defense, defendant remained silent in the face of Bryman's accusation that defendant "was going to fix his case for him."

No evidence to the contrary, it is apparent that Dobrichan and Pignet were police officers. Further, according to his own admission, when defendant first received the call from Dietrich about Bryman's case, he immediately advised Dobrichan; then, at Dobrichan's suggestion he called Bryman to see what he had to say; and thereafter reported the conversation to both Dietrich and Pignet and actually discussed with them first, the sum of $2,000 he intended to solicit from Bryman, then $1,700. Supporting the truth of this is defend-

ant's call to Dobrichan in Bryman's presence telling him he had the $1,700 "to take care of number one and number two [the ABC and criminal case]." What these two officers could do for Bryman is reflected in defendant's further admission that they had previously delivered to him and others, at his request, certain criminal records. Obviously were they to suppress any report of Bryman's violation in the police department no criminal charge would be filed and no license revocation proceeding would ensue.

For the foregoing reasons the judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.