**Corinna GONZALES, Plaintiff,**

v.

**Patricia HARRIS, Secretary of Health and Human Services, Defendant.**

**CV F 79–215–EDP**

United States District Court,
E. D. California.

May 13, 1981.

Michael J. Seng, Blumberg, Sherr & Kerkorian, Fresno, Cal., for plaintiff Corinna Gonzales.

William B. Shubb, U. S. Atty., Mio D. Quatraro, Asst. U. S. Atty., Fresno, Cal., for defendant Harris, HEW.

must be submitted to the court or magistrate within the time limits applicable to the filing of

Mary Louise Frampton, Olmas & Frampton, Fresno, Cal., for plaintiff Vera Chambers.

Jan M. Biggs, Stammer, McKnight, Barnum & Bailey, Fresno, Cal., for defendant Madera Glass.

**MEMORANDUM DECISION AND ORDER FOR JUDGMENT**

PRICE, District Judge.

As indicated by separate Memorandum Decision filed herein, D.C., 514 F.Supp. 991, the defendant is not entitled to a de novo determination of the issues raised by the objections to the magistrate's recommendations which were not timely filed. However, in view of the importance of the questions raised in this case, and the potential for the same type of issues recurring in this district, the court has taken special pains to determine whether or not the magistrate's recommendations comport with the applicable law.

At the outset, it should be noted that the defendant's contentions regarding the applicability of 42 U.S.C. § 416(h)(2)(A) is determinative in this action are correct. That section reads as follows:

"(2)(A) In determining whether an applicant is the child or parent of a fully or currently insured individual for purposes of this title, the Secretary shall apply such law as would be applied in determining the devolution of intestate personal property by the courts of the State in which such insured individual is domiciled at the time such applicant files application, or, if such insured individual is dead, by the courts of the State in which he was domiciled at the time of his death, or, if such insured individual is or was not so domiciled in any State, by the courts of the District of Columbia. Applicants who according to such law would have the same status relative to taking intestate personal property as a child or parent shall be deemed such."

objections themselves, as enlarged by Fed.R. Civ.P. 6(a) and 6(e).

Clearly, then, the only choice of law applicable to the determination of plaintiff's entitlement to benefits available to the court is the law of the State of California. There is no evidence in this case which the court could find which points to the father's domicile in a state other than California at the time of his death; indeed, even the plaintiff's recitation of fact leads unerringly to that conclusion.

However, having determined that the law of California, as interpreted by its courts, is the applicable law in this case does not require the result that defendant originally urged upon the magistrate and later upon this court. In fact, quite the contrary is true.

California Civil Code § 230, in effect at the time of the death of the plaintiff's father, provides as follows:

> "Adoption of Illegitimate Child. The father of an illegitimate child, by publicly acknowledging it as his own, receiving it as such, with the consent of his wife, if he is married, into his family, and otherwise treating it as if it were a legitimate child, thereby adopts it as such; and such child is thereupon deemed for all purposes legitimate from the time of its birth. The foregoing provisions of this chapter do not apply to such an adoption."

A succession of California cases in the California courts taken together, clearly establish that under California law Corinna was legitimated under this section, and hence is entitled to summary judgment in the matter.

The first case of importance is *Estate of Lund*, 26 Cal.2d 472, 159 P.2d 643. *Lund* held that the acts necessary to effect legitimation under the aforesaid § 230, may be performed in states *outside* of California. The court in *Lund* based its decision squarely on the fact that once the status of parent and legitimated child had been established by the extra-territorial activities of the illegitimate father and upon his establishing domicile in California, that status "became subject to the jurisdiction of this state for all purposes connected with the administra-

tion of its laws". (*Estate of Lund, supra*, at p. 493, 159 P.2d 643.)

Still unresolved by the Lund case was the additional question as to whether or not all the various acts required by § 230 to effect a legitimation must be performed, or is it necessary only that those which the illegitimate father can perform, are required? That question was conclusively answered in *Darwin v. Ganger*, (1950) 174 Cal.App.2d 63, 344 P.2d 353. In that case, the court noted, at page 72, 344 P.2d 353, that:

> "If a man has no wife, he can legitimate his offspring by a course of conduct which the community could consider a public acknowledgment that he was the father of the child, (*Estate of Gird*, 157 Cal. 534, 542–543 [108 P. 499, 137 Am.St. Rep. 131]) but the existence of such public acknowledgment by an unmarried man is a question to be decided on the circumstances of each case. (*Estate of Baird*, 193 Cal. 225, 274–279 [223 P. 974].) Where a man has no wife, he can publicly acknowledge his child notwithstanding the fact that he does not maintain a household into which the child is taken. (See *Blythe v. Ayres, supra*, 96 Cal. 532, 560, 592–593 [31 P. 915]; *In re Jessup*, 81 Cal. 408, 433–434 [21 P. 976, 22 P. 742, 1028, 6 L.R.A. 594].) If the man is unmarried the 'family' referred to in section 230 may consist only of the father, the mother, and the child. (*Estate of Gird, supra*, 157 Cal. 534, 540 [108 P. 499]; *Serway v. Galentine*, 75 Cal.App.2d 86, 90 [170 P.2d 32].) Thus, an unmarried man may legitimate his offspring by living with the mother and child for a short period during which he represented the mother as his wife and the child as his own. (*Serway v. Galentine, supra*, 75 Cal.App.2d 86, 90–91 [170 P.2d 32].)

*Darwin* seems to suggest, however, that if the illegitimate father later married, regardless of what other indicia of legitimation he bestows upon the child, they will not be sufficient unless he brings the child into his home with the consent of his subsequently acquired wife. If that were still

the law of California, of course, the court's decision in this case would have to be for the defendant. It is not.

In *Lavell v. Adoption Institute*, 185 Cal. App.2d 557, 8 Cal.Rptr. 367 (1960), the court squarely held the cohabitation between the natural father and the natural mother during the pregnancy of the unborn child would satisfy the requirements of § 230 for purposes of subsequent legitimation, although the father and mother did not live together after birth. Commenting upon this state of affairs, the *Lavell* court noted, at page 561, 8 Cal.Rptr. 367:

> "We hold that under section 29, the unborn child of unwed parents is an existing person for the purpose of adoption and we believe is as capable of being received into the family of the father, and to be as much a part of the family as an unborn child of married parents. The child must be treated as if it were legitimate, but this requirement may not be construed as applying only to a child after its birth. It is not questioned that respondent provided a home for the child's mother and supported her until their separation, shortly before the birth of the child. Certainly he did not deny parenthood, nor did he in any manner treat it otherwise than as a legitimate child. He has not neglected the child or failed in any duty toward it. If it should be held that such a child is not subject to adoption by its father until after it is born, an unknown, but possibly considerable number of children of unwed parents might be forever barred from legitimation. We could suppose a case where the father up until the time a child was born had maintained the mother and unborn child in his home, and acknowledged his parenthood and done everything in his power to treat the child as a legitimate child would have been treated and yet if, through death, incompetency or other misfortune, he was unable thereafter to

meet the requirements of section 230, the child would forever remain illegitimate. We do not believe it would be reasonable, and it certainly would be most unfair to children in those circumstances, to hold that the efforts the father had made, in every way in which it was possible for him to make efforts to give the child the status of legitimacy, should go for naught."

The court is not unmindful of the fact that apparently Jesse did marry after his return to California which terminated the cohabitation with Corinna's mother.[1] However, under the holding in *Lavell, supra*, to require Jesse to have performed the additional act of taking Corinna into his home which presumably was established in California with his new wife, is contrary to logic and reason. Such a requirement would, in effect, hold, under the reasoning of *Lavell*, that for some indeterminate period of time before Jesse's marriage in California, Corinna was legitimate. By the act of marrying, or alternately, by the act of marrying and not bringing Corinna into his home, Corinna somehow again became illegitimate.

In addition to such a proposition defying logic, such a result would fly squarely in the face of the strong California policy in favor of legitimation as contrasted with the common law rule which placed formidable and substantial obstacles in the path of an illegitimate child to achieve legitimation.

---

1. The parties concede that the record is unclear whether Jesse had actually left Arizona before Corinna's birth, however, this fact is immaterial to the court's holding.