NANNESTAD, Appellant, v. NANNESTAD, et al., Respondent.

(183 N. W. 541.)

(File No. 4774.   Opinion filed June 23, 1921.)

1. **Parent and Child—Custody of Deceased Mother's Infant—Fulfilled Promise to be Child's Mother, Child's Preference for Defendant's Home, Moral Welfare Thus Promoted, Plaintiff Claimant Afflicted with Tuberculosis—Findings for Defendant Sustained.**

In habeas corpus for custody of plaintiff's minor child, whose mother during her last illness exacted a promise that the respondent Sina Nannestad would take the infant to her home and care for him and be a mother to him, plaintiff having taken the child to respondent's comfortable and wholesome home pursuant to said agreement, where he remained for about seven years and has been treated by defendant and her co-defendant husband as their own child, he having formed a preference for said home, and it being for his best interests and mental, moral, and physical welfare that he remain in their custody and control; it further appearing that plaintiff has been afflicted with pulmonary tuberculosis, and, not being physically strong, has hired a housekeeper and has no one else to care for said minor, to place whom in plaintiff's home would expose him to danger of tuberculosis; held, that such evidence sustained findings in favor of defendants.

2. **Same—Plaintiff's Fitness to Have Child's Custody, His Affection, Solicitude, Contributions to Support, Effect Re Custody—Filial Relations, and Statutory Right of Father to Child's Custody Not Controlling.**

The evidence showing nothing as to plaintiff's moral character or fitness to have custody of his child, nor anything justifying finding of his unfitness to rear it, but showing his manifestation of affection and solicitude for him, his frequent visits to defendant's home and his voluntary contributions of $840 for his benefit during said seven years, yet plaintiff, being practically without a home and afflicted as stated, and being about to remove to California for his health, these circumstances preclude conclusion that it would be promoting child's interests to take him from his present home; that notwithstanding the sacredness of filial relations, and that Sec. 184, Code 1919, gives father paramount right to child's custody, such right is qualified and must bend to permanent interest of child.

3.  **Appeals—Error—Technical Erroneous Rulings Re Evidence, Nonprejudicial.**

Assigned errors concerning reception and rejection of evidence, considered, and whether technically erroneous, are nonprejudicial.

Appeal from Circuit Court, Deuel County. Hon. WILLIAM N. SKINNER, Judge.

Proceeding in habeas corpus by Herman C. Nannestad, against Olaus Nannestad and Sina Nannestad, to determine the custody of Adolph Melvin Nannestad, his minor son. From a judgment for defendants, and from an order denying a new trial, plaintiff appeals. Affirmed.

*W. W. Knight,* for Appellant.

*Geo. R. Marquis,* for Respondents.

(2) To point two of the opinion, Appellant cited: Norval v. Zinsmaster, (Neb.) 77 N. W. 373, 73 Am. St. Rep. 500.

SMITH, J. Habeas corpus upon the petition of Herman C. Nannestad to determine the custody of Adolph Melvin Nannestad, his son, aged 7 years.

Mary Nannestad, plaintiff's wife, mother of Adolph, was a daughter of a sister of Olaus O. Nannestad, one of the defendants herein; their home was on a farm in Deuel county owned by plaintiff. The family of plaintiff consisted of his said wife, his daughter Clara, and his mother, aged about 80 years. Defendant Olaus O. Nannestad, his wife, Sina, and five children, ranging from 14 to 21 years of age, lived on a farm owned by him, about 3½ miles from plaintiff's farm. An intimate friendship had existed between the two families for many years. After the birth of Adolph, his mother became very ill, and, at her request,

the defendant Sina Nannestad, came to plaintiff's home to care for her and the two children, and remained there for about 10 weeks, when Mary Nannestad was taken to a hospital. Sina Nannestad remained at plaintiff's home caring for the children, until after the death and funeral of Mary Nannestad. The plaintiff went to the hospital with his wife, and remained with her until her death, and took her body back to their home for burial. Upon his return he told Sina Nannestad that his wife had told him of a request she had made to Sina Nannestad, and her promise to take Adolph to her home and care for him as though he were his own child. Plaintiff continued to reside upon his farm with his daughter and his mother, who was aged and feeble, until his mother's death in the fall of 1919, when he sold his farm and bought and moved into a home in the village of Brandt, which is near defendant's farm. At various times prior thereto and shortly after occupying his new home in Brandt plaintiff expressed to defendants a desire to have the care and custody of his minor son in his own home. Ultimately this was refused by defendants, and this proceeding was begun.

[1] The trial court entered findings, conclusions, and judgment for defendants. The trial court found—and we think there is sufficient evidence to sustain the finding—that the mother of Adolph, during her last illness, exacted a promise from the defendant Sina Nannestad that she would take the infant Adolph to her own home and care for him as though he were her own child, and would be a mother to him; that plaintiff took the said Adolph, then 12 weeks old, to defendants' home, pursuant to said promise and agreement, and for about 7 years he has remained in said home, and has been treated by both defendants as though he were their own child; that a strong affection exists on the part of said infant toward the defendants; that he has all the comforts of a good home and of wholesome surroundings, and has at all times been treated kindly and tenderly cared for, clothed, and maintained, and has been given a Christian training in a Christian home, and has attended the public schools and Sunday school with defendants' other children; that he has formed a preference for the home of defendants, and desires to be left in their custody; and that it is for the best interests of said Adolph in respect to his temporal, mental, and moral welfare, as well as

his physical welfare, that he remain in the custody and under the control of the defendants.

The trial court also found, and we think upon sufficient evidence, that for more than 7 years last past the plaintiff had been afflicted with pulmonary tuberculosis, is in poor health, and is not physically strong enough for ordinary farm work; that the plaintiff's family consists of himself and his daughter Clara, now 9 years old; that plaintiff from time to time has hired a housekeper, and has no one else to care for said minor, and that to place said infant in plaintiff's home would be exposing him to the danger of becoming afflicted with tuberculosis.

[2] We are of the view that there is sufficient evidence in the record to sustain these findings. While the trial court made no finding as to the moral character or fitness of plaintiff to have the custody of his own child, the record discloses nothing whatever which would justify a finding of plaintiff's unfitness to rear his own child. On the contrary the record shows that plaintiff has manifested much affection and solicitude for his infant son, has visited him frequently in defendant's home and has voluntarily contributed some $840 for his benefit during the past 7 years. It appears, however, that plaintiff is practically without a home, is afflicted with chronic pulmonary tuberculosis, is about to remove to California for his health, to reside among strangers, and is subject to all the vicissitudes and uncertainties which must attend his physical condition in such surroundings. Under such circumstances we do not feel that it would at this time be to the best interests of the infant son to take him from his present home, where he is supplied with everything required for his physical and moral welfare and is affectionately cared for and nurtured, and to place him in his father's home, where he might possibly become infected with tuberculosis, and where he must lack a mother's care and affection, such as he has in his present home.

[3] We concur fully in the views expressed in Engle v. Yorks, 7 S. D. 254, 64 N. W. 132, that—

"Parental and filial relations are too sacred and delicate to be ignored, and ought only to be disturbed when it is shown that the well-being of the child plainly requires it."

And in Haglund v. Egge, 41 S. D. 433, 171 N. W. 212,

wherein this court held that though Revised Code 1919, § 184, gives the father a paramount right to custody of his minor child, such right is not absolute, but qualified, and must bend to best permanent interest of the child; neither father nor mother having rights militating seriously against the child's welfare. In that case, as in State ex rel. Rennings v. Armstrong, 141 Minn. 47, 169 N. W. 249, and Jamison v. Gilbert, 38 Okl. 751, 135 Pac. 342, 47 L. R. A. (N. S.) 1133, cited by appellant, the father of the infant had remarried and had a suitable home, free from danger to the physical health or welfare of the child. Further comment is unnecessary.

[4] Appellant has assigned error upon certain rulings of the trial court in the reception and rejection of evidence, all of which we have considered. We are of the view that, whether technically erroneous or not, none of them were actually prejudicial to appellant's rights.

The judgment of the trial court is affirmed.