Virginia **RODRIGUEZ**, Plaintiff,

v.

Kristina **RODRIGUEZ**, by and through her General Guardian, Karen G. Adams, Defendants.

Civ. No. 249875.

United States District Court, N. D. California.

June 24, 1971.

Robert E. Patmont, of Patmont & Myers, San Francisco, Cal., for plaintiff.

Dale M. Underwood, Santa Rosa, Cal., for defendant.

## MEMORANDUM OPINION

BRUCE, R. THOMPSON, District Judge.

This is an action to determine the rights to the proceeds of a serviceman's group life insurance policy issued by the Prudential Insurance Company of America upon the life of Joseph M. Rodriguez under Public Law 89–214 (38 U.S.C. § 765, et seq.). The proceeds of the $10,000 policy have been deposited in the Registry of the Court and this is, in substance, an interpleader action in which the contestants to the fund are the plaintiff, Virginia Rodriguez, the mother of the insured serviceman, and Kristina Rodriguez, the minor daughter of the insured, defendant.

The evidence establishes that Joseph M. Rodriguez was born on June 9, 1948. In 1965, he met Karen G. Parganan, now Karen G. Adams, while attending school in Santa Rosa, California. Karen G. Parganan was born June 20, 1952. During their friendship, Karen and Joseph had sexual relations. In May, 1966, Joseph entered military service. In early summer of 1966, Karen discovered that she was pregnant. While stationed at Fort Ord, California, Joseph visited Karen on weekends at Santa Rosa. When Joseph and Karen discussed Karen's pregnancy, they wanted to get married but Joseph's mother, Virginia Rodriguez, the plaintiff, would not consent. Joseph and Karen then went to the Social Welfare Department to apply for welfare and, in the course of their discussions with the welfare representative, they were advised to see the County Probation Officer, Mr. John F. Barnes, who discussed the situation with them and to whom Joseph acknowledged paternity of the child which Karen was carrying and expressed a desire to do whatever he could to provide for Karen's anticipated confinement and for the care of the child. Mr. Barnes referred Karen and Joseph to the District Attorney's Office, and on August 9, 1966, Joseph signed a stipulation acknowledging paternity and admitting his obligation of support. The District Attorney also prepared a complaint on behalf of Karen Parganan against Joseph M. Rodriguez which was filed as Civil Action No. 56064 in the Superior Court of the State of California for the County of Sonoma. A summons was issued and service of summons was made on the defendant on August 9, 1966. On August 18, 1966, the Court entered an order finding that Joseph Rodriguez was the father of the unborn child and directing him to pay $25 per month for the child's support pursuant to the stipulation which Joseph Rodriguez had signed.[1] The child, Kristina Rodriguez, was born on December 9, 1966. Joseph made support payments for the maintenance of said child for the months of September, October, November and December, 1966. Joseph continued his military service, and in May, 1967, was sent to Viet Nam. On or about June 7, 1967, Joseph signed an agreement in the presence of his commanding officer, Captain Eddie D. Badgley, agreeing to contribute $25 each month, beginning August 1, 1967, to the support of his child, Kristina Rodriguez. He made contributions through the Probation Officer for the months of July, August and November, 1967, and February, 1968. On February 2, 1968, Joseph was killed in action.

On July 5, 1968, Virginia Rodriguez, plaintiff here, as Administratrix of the Estate of Joseph M. Rodriguez, filed a motion in the paternity action, No. 56064 in Sonoma County, to set aside the finding of paternity and the support order upon the ground that the defendant in that action, Joseph Rodriguez, was a minor and had not been represented by a general guardian or guardian ad litem in the action. Virginia Rodriguez

---

1. This order may have been prematurely entered inasmuch as ten days had not elapsed after service and Joseph had not entered a voluntary appearance and had not waived service.

also filed a notice of disaffirmance of the finding of paternity. This motion was contested by the District Attorney's office and on September 4, 1968, the Court entered an order vacating and setting aside the finding of paternity and order for support made on August 18, 1966.

Before shipping out to Viet Nam and while stationed at Fort Ord, California, Joseph visited Karen and the baby in Santa Rosa on weekend leaves, took them out on recreational occasions and recognized the parental relationship. On such visits, he stayed at his mother's home while Karen and the child were residing with Karen's mother.

On May 12, 1966, Joseph signed DA Form 3054 respecting the group life insurance policy in which he elected to remain insured for $10,000, not to elect a settlement option, and to have payment made in the order of precedence set forth in the law. The statute (38 U.S.C. § 770) provides that if the insured has not designated a beneficiary, the proceeds of the policy shall be paid in the following order: First, to the widow or widower; second, to the child or children; and third, to the parents. This is a contest between the sole surviving parent and a daughter born out of wedlock, and the issue presented is whether the daughter is a "child" within the meaning of the statute so that she would have priority over the mother.

██ The United States, as amicus curiae, has filed a brief discussing the proper interpretation of the law. The first question is whether the meaning of the word "child" is a matter of federal law to be applied uniformly throughout the country, or whether reference must be had to the laws of each particular state to determine the existence of a parent-child relationship between the serviceman and his child born out of wedlock. Attention has been directed to the case of De Sylva v. Ballentine, 351 U.S. 570, 76 S.Ct. 974, 100 L.Ed. 1415 (1956), in which it was held that under the Copyright Act, it was necessary to refer to the law of a particular state to determine whether a claimant was a "child" succeeding to the rights to copyright under the provisions of the copyright statute relating to the descent of the interests in the copyright after the death of the copyright owner. Other cases in analogous situations have been cited arising variously under the Federal Employees Group Life Insurance Act, the National Service Life Insurance Act and the Servicemen's Group Life Insurance Act, in which the question has been discussed and varying conclusions reached depending, in part, upon whether the particular court considered itself bound by the De Sylva precedent or elected to distinguish it. In this case, we think it unnecessary to decide whether the definition of "child" in Section 770 is a question of federal or state law inasmuch as the facts establish that Kristina Rodriguez is the child of Joseph Rodriguez whatever law may be applied. If it is a question of federal law, the word "child" should be given its natural meaning to include illegitimate as well as legitimate children where the proof adduced, as in this case, establishes unquestionably that the deceased was the natural father of the child. Middleton v. Luckenbach Steamship Co., 70 F. 2d 326 (2nd Cir. 1934); Metropolitan Life Insurance Company v. Thompson, 368 F.2d 791 (3rd Cir. 1966).

██ We prefer, however, to rest decision upon the finding that Kristina Rodriguez is the legitimate daughter of Joseph Rodriguez. Under the law of the State of California, which controls the status of these parties and the existence of a parent-child relationship, the statutes provide for the adoption by the father of an otherwise illegitimate child.

"The father of an illegitimate child, by publicly acknowledging it as his own, receiving it as such, with the consent of his wife, if he is married, into his family, and otherwise treating it as if it were a legitimate child, thereby adopts it as such; and such child is thereupon deemed for all purposes legitimate from the time of its birth. The foregoing provisions of

this Chapter do not apply to such an adoption." California Civil Code § 230.

■ With respect to a child born out of wedlock to an unmarried, single father, a clear public acknowledgment of paternity, plus the performance of such other acts as are reasonably sufficient under the circumstances of the particular case to constitute a "treating [the child] as if it were a legitimate child", accomplishes a complete legitimation of the child. Such a child may be legitimated prior to its birth. Lavell v. Adoption Institute, 185 Cal.App.2d 557, 8 Cal.Rptr. 367 (1960). If the father, in addition to acknowledging the paternity, indicates an intention and desire to treat the child as his own, considering the circumstances, the requirements of the statute are satisfied and it is not essential that the father have and maintain a home and family into which the child is received. Estate of Abate, 166 Cal.App.2d 282, 333 P.2d 200 (1958); Darwin v. Ganger, 174 Cal.App.2d 63, 344 P.2d 353 (1959); Blythe v. Ayres, 96 Cal. 532, 31 P. 915 (1892); In re Jessup's Estate, 81 Cal. 408, 21 P. 976 (1889).

Under California law, a minor parent may give an irrevocable consent to adoption of a child by a stranger. Civil Code § 226.9; In re Adoption of Pitcher, 103 Cal.App.2d 859, 230 P.2d 449 (1951). It would be an anomaly to hold that an acknowledgment of paternity by a minor natural parent is subject to disaffirmance until his majority.

■ The evidence here establishes a clear public acknowledgment of paternity by Joseph Rodriguez prior to the birth of the child and an assumption by him of the obligations of a parent for the support of the child. The evidence also establishes a clear public acknowledgment of paternity by Joseph Rodriguez seven months after the birth of the child and a further acknowledgment of the obligation of support. In the mean-time, Joseph did what he could in view of his military obligations to recognize and treat the child as his own. He was a young man nineteen years of age at the time of his death who had been continuously in military service, subject to military orders, from May, 1966. He had no opportunity to establish a home and family. His desire to marry the mother of his daughter was frustrated by his age and the refusal of his mother to give consent. There is no dispute in the evidence and it is more than adequate to establish an adoption and legitimation of the child under Section 230 of the Civil Code. The proceedings which resulted in a vacation of the Superior Court order by the Sonoma Court and the earlier findings of paternity and order for support do not change the situation. The clear acknowledgment of paternity was not vitiated by the effort to dissolve the judicial finding of paternity. We question the validity of the final order entered by that court on motion of Virginia Rodriguez as Administratrix of the Estate of Joseph M. Rodriguez. We do not think that the personal right of the deceased to acknowledge or disaffirm parentage is a right to which a personal representative of his estate succeeded. But regardless of the regularity of the proceedings resulting in the vacation of the finding of paternity, the evidence of Joseph's acts and conduct clearly acknowledging paternity and treating the child as his own was not obliterated by the court order. A minor parent may exercise parental rights relating to the status of parent and child and his conduct in this area is not subject to infirmity or avoidance by reason of his minority.

Accordingly, we conclude that Kristina Rodriguez, a minor, acting by and through her general guardian, Karen G. Adams, is entitled to the proceeds of the insurance. The attorney for this claimant will prepare and submit an appropriate form of judgment.