Frances E. MORENO, as guardian for Ernest R. Moreno, Jr., a minor, Plaintiff-Appellant,

v.

Elliot L. RICHARDSON, Secretary of Health, Education, and Welfare, Defendant-Appellee.

No. 71-2039.

United States Court of Appeals, Ninth Circuit.

Aug. 21, 1973.

Loren E. Buckey (argued), Sacramento, Cal., for plaintiff-appellant.

William B. Shubb, Chief Asst. U. S. Atty. (argued), Dwayne Keyes, U. S. Atty., Sacramento, Cal., for defendant-appellee.

Before BARNES and TRASK, Circuit Judges, and THOMPSON,* District Judge.

BRUCE R. THOMPSON, District Judge:

This action was brought in the District Court under Section 205(g) of the Social Security Act, hereinafter called "the Act" [42 U.S.C. § 405(g)], to review a final decision of the Secretary of Health, Education and Welfare disallowing the plaintiff's application, on behalf of her son, for child's survivor's insurance benefits under Section 202(d) of the Act [42 U.S.C. § 402(d)].

Both plaintiff and defendant moved in the District Court for summary judgment. The plaintiff's motion was denied and the motion of the defendant was granted.

On September 5, 1967, plaintiff filed an application for surviving child's insurance benefits on behalf of her son based on the earnings record of the child-claimant's natural father, Ernest Moreno. The claim was initially denied and denied again after reconsideration upon the ground that the child was not the wage-earner's "child" under the definitions in the Social Security Act.

* Hon. Bruce R. Thompson, United States District Judge, District of Nevada, sitting by designation.

Plaintiff requested a hearing. This was held on August 30, 1968, and resulted in pertinent findings by the hearing examiner quoted in the margin.[1] Benefits were denied.

After the District Court action to review the decision was commenced, the parties stipulated that it be remanded to the Secretary for further action. The new evidence included a statement by plaintiff's mother that plaintiff and Moreno had in fact lived together continuously since July 1965 and Moreno had supported plaintiff. Also included was a judgment declaring paternity entered by the Superior Court of the State of California, in and for the County of Sacramento, on March 4, 1969, in an action by Frances E. Moreno against the Administrator of the Estate of Ernest Moreno. The judgment was entered pursuant to Section 230 of the California Civil Code. The findings of fact in support of the judgment are copied in the margin.[2]

The final decision on reconsideration was entered February 6, 1970, denying the claim. The following extract explains the basis for the decision:

"Although at the outset of this claim for child's benefits the wage earner's mother also asserted that the wage earner was not living with the claimant's mother (Exhibit 9), she and the claimant's mother have now recanted this assertion.

"It is not disputed that at the time the claimant's mother met the wage earner she was separated from her husband, Larry R. Price, and needed assistance in supporting herself and their two children. She and the wage earner were aware that if she lived with the decedent she would not be eligible for welfare assistance. In view of the fact that the wage earner stated he was not permanently employed but only had a temporary part time job, and would not be able to assume responsibility until they married in February, it is doubtful that they would jeopardize her welfare assistance by living together especially since the welfare department was aware that

[1] "(4) The evidence establishes that Frances E. Moreno received $165 per month as welfare and/or aid from the County of Sacramento for rent, food and clothing from 1965 through August 1, 1966, the date of claimant's birth.
"(5) The evidence establishes that the deceased, Ernest Moreno, orally admitted that he was the father of Ernest R. Moreno prior to the child's birth and prior to the death of Ernest Moreno.
"(7) The evidence establishes that there has been no court decree indicating that the deceased, Ernest Moreno, was the father of the applicant.
"(9) The evidence establishes that Ernest Moreno (now deceased) visited with claimant, Frances Moreno, three times a week during the child's gestation period, but does not establish that he was living with the claimant and her son.
"(10) The evidence fails to establish that Ernest Moreno (deceased) was living with or contributing to the support of the applicant at the time that he (Ernest Moreno, deceased) died.
"(12) The evidence establishes that Ernest Moreno did publicly acknowledge that he was the father of Ernest R. Moreno during gestation, but the evidence fails to establish that he received it into his family and otherwise treated it as his legitimate child, nor did

Ernest Moreno acknowledge the child as his in writing signed in the presence of competent witnesses.
"(13) The evidence fails to establish that Ernest R. Moreno is entitled to devolution of intestate property of Ernest Moreno, deceased; nor that he is the child of the deceased worker as determined under the laws of the State of California.
"(14) The evidence fails to establish that Ernest R. Moreno is the child of Ernest Moreno, deceased, under the criteria of the Social Security Act."

[2] "1. ERNEST RENO MORENO was born on August 1, 1966.
"2. Ernest R. Moreno, deceased, is and was the father of said minor child.
"3. Plaintiff and the deceased Ernest R. Moreno are not now and never were married to one another.
"4. The deceased Ernest R. Moreno publicly acknowledged that he was the father of said minor child.
"5. The deceased Ernest R. Moreno was an unmarried man who lived with plaintiff and said unborn minor child as a family in her home and said father received said minor child into his family.
"6. The deceased Ernest R. Moreno otherwise treated said child as if it were a legitimate child."

she was now pregnant. Furthermore, although several other disinterested parties testified that the wage earner verbally acknowledged the claimant as his unborn child; that they knew the wage earner and the claimant's mother; and that they knew that the wage earner stated that he intended to marry her, not one of these witnesses stated that the parties lived together.

"The initial statement by the wage earner's mother asserting that the wage earner lived with her and not with the claimant's mother more accurately represents the truth in this case. This statement was made at the time this claim was being initially developed and before she was aware of the effect on the child's entitlement.

"The record as a whole shows that the decedent's address was that of his mother, although he spent a great part of his time with the claimant's mother. The restrictions laid down by welfare for continued assistance were that the wage earner not stay overnight with the claimant's mother no more than 3 visits a week, no cash to claimant's mother but gifts of pots and pans were allowable. That the decedent and claimant's mother elected to accept these restrictions is not disputed, and actions to conform therewith are verified by the statements of parties and evidence in general. The fact that the parties may have exceeded the restrictions set forth by the Welfare department as to visits or overnight stays does not establish that the parties were 'living together' within the purview of the Social Security Act. The current allegations that the decedent and claimant's mother 'lived together' are not supported by the evidence.

"The record does not show allegations or evidence that the decedent contributed to the claimant's support. The claimant's mother stated that the wage earner only infrequently gave her small sums of money and on two occasions brought her small gifts. This assertion is consistent with the wage earner's admittedly poor financial condition and the welfare imposed restrictions.

"The evidence of record is persuasive that the decedent and the claimant's mother were not living together at the time of his death, and he was not contributing to the unborn child's support, and the Appeals Council so finds. Thus, the claimant is not deemed a child under section 216(h)(3)(C)(ii) of the Act."

There are two principal issues on appeal. First, the plaintiff contends that the record supports the claim under Section 216(h)(3)(C)(ii) of the Social Security Act [42 U.S.C. § 416(h)(3)(C)(ii)]:

"An applicant * * * shall nevertheless be deemed to be the child of such insured individual if * * * in the case of a deceased individual * * * such insured individual is shown by evidence satisfactory to the Secretary to have been the father of the applicant, and such insured individual was living with or contributing to the support of the applicant at the time such insured individual died."

■ Plaintiff argues that the facts found support entitlement under this section. Compare: Wagner v. Finch, 413 F.2d 267 (5th Cir. 1969). We disagree. "The scope of our review in this case is limited: 'The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive * * *.' 42 U.S.C. § 405(g). Dean v. Gardner, 393 F.2d 327 (9th Cir. 1968); Mark v. Celebrezze, 348 F.2d 289 (9th Cir. 1965)." Rhinehart v. Finch, 438 F.2d 920 (9th Cir. 1971). This principle applies to determination of credibility and to reasonable inferences to be drawn from the evidence found to be true. Foss v. Gardner, 363 F.2d 25 (8th Cir. 1966); Beane v. Richardson, 457 F.2d 758 (9th Cir. 1972).

The Appeals Council, acting for the Secretary, chose to believe the evidence that Moreno and the child's mother were not living together and that decedent infrequently gave her small sums of

money and on two occasions gave her small gifts. They inferred and found that decedent wage-earner was not contributing to the unborn child's support. This is a fair and reasonable inference from one view of the evidence which has substantial support in the record, and this Court is not authorized to find to the contrary.

█ The second ground asserted for reversal is that the Secretary misinterpreted and misapplied California law respecting legitimation of children. We have more sympathy with this contention. The Appeals Council forthrightly denounced the absence of respect for the truth exhibited by plaintiff and decedent's mother.[3] But irrespective of their juggling of the facts to suit what appeared to be their best position at the particular moment, if, under both statements of what occurred, the child of decedent wage-earner is the legitimated child of decedent under California law, the claim should be allowed. The revised statement of facts on remand to the Secretary was that Moreno did, in fact, live with plaintiff for several months and he contributed substantially to her support while she was pregnant. This was the evidence which, presumably, was presented to the California Superior Court in the 1969 legitimation proceeding resulting in the finding No. 5 (see Fn. 2, supra).[4] The Appeals Council chose to believe the first story,

that is, that Moreno had freely acknowledged paternity, had paid for the divorce, intended to marry plaintiff and buy a home as soon as the divorce became final, but that Moreno and plaintiff did not live together and he made only insignificant contributions to her support because the restrictions laid down by welfare were that Moreno not stay overnight, visit no more than three times a week and make only small gifts.

The Social Security Act adopts state law respecting the legitimation of children:

"(2) (A) In determining whether an applicant is the child or parent of a fully or currently insured individual for purposes of this subchapter, the Secretary shall apply such law as would be applied in determining the devolution of intestate personal property by the courts of the State in which such insured individual is domiciled at the time such applicant files application, or, if such insured individual is dead, by the courts of the State in which he was domiciled at the time of his death, or, if such insured individual is or was not so domiciled in any State, by the courts of the District of Columbia. Applicants who according to such law would have the same status relative to taking intestate personal property as a child or parent shall be deemed such." 42 U.S. C. § 416(h)(2)(A).

3. "After careful consideration of the entire record, the Appeals Council is of the view that the claimant's mother and the deceased wage earner's mother have been less than candid with respect to the welfare claim and the claim for social security benefits on behalf of the claimant. It appears that in order to come within the purview of the regulations of the Welfare Department of Sacramento County they found it necessary to circumvent the provisions of the California Code relating to legitimation of a child born out of wedlock. Thus, their subsequently recanted statements in the instant case are subject to very close scrutiny and their veracity is subject to considerable doubt. If it was expedient to take a devious course of action in order to obtain welfare assistance, it would be just as expedient to employ similar means to obtain social security benefits."

4. If a transcript of the testimony offered to the Superior Court of the State of California, in and for the County of Sacramento, in the 1969 legitimation action had been made a part of this record and it should disclose that the evidence there presented was the same as the evidence before the Secretary in support of the claim, we would be inclined to hold the Secretary to be bound by the paternity declaration of the California Court. Cf. Legory v. Finch, 424 F.2d 406 (3rd Cir. 1970) : "While the Social Security Administration may ignore a decision by a lower state court, particularly one entered ex parte, when the decision was demonstrably inconsistent with the general law of the state * * *, such a course is improper when the lower court decision is fair and logical and no authoritative decision to the contrary exists."

Section 230 of the California Civil Code governs this case.

"The father of an illegitimate child, by publicly acknowledging it as his own, receiving it as such, with the consent of his wife, if he is married, into his family, and otherwise treating it as if it were a legitimate child, thereby adopts it as such; and such child is thereupon deemed for all purposes legitimate from the time of its birth. The foregoing provisions of this Chapter do not apply to such an adoption." California Civil Code § 230.

█ The final decision of the Appeals Council, although mentioning this section, gave no real consideration to it and cited no California cases on the legitimation by a father of his illegitimate child. The fact found by the Trial Examiner was: "The evidence establishes that Ernest Moreno did publicly acknowledge that he was the father of Ernest R. Moreno during gestation, but the evidence fails to establish that he received it into his family and otherwise treated it as his legitimate child." While the reasons are not explicitly clear, we infer that the Social Security Administration denied the claim under Section 230 of the California Civil Code because Moreno had not received the child into his family.

Such a literal reading of the statute is not supported by the decisions of the California courts. Despite some early language to the contrary (see Estate of Baird, 193 Cal. 225, 279, 223 P. 974 (1924)), current California authority has minimized the element of receipt by the father. Thus, in Estate of Abate, 166 Cal.App.2d 282, 333 P.2d 200 (1958), the Court ruled that the element of receipt into the family is applicable only where the father has a family other than the illegitimate child. In another case, with facts quite similar to the instant situation, the Court held that Section 230 legitimation can be accomplished prior to birth. To do so, the unborn child must be treated as legitimate so far as the

father is able. Lavell v. Adoption Institute, 185 Cal.App.2d 557, 8 Cal.Rptr. 367 (1960).[5]

In other California developments, quite consistent with the state policy favoring legitimation, *infra*, the courts have held that making plans to live together satisfied Section 230 where a pending divorce decree prohibited doing more. Hurst v. Hurst, 227 Cal.App.2d 859, 39 Cal. Rptr. 162 (1964). In Estate of Peterson, 214 Cal.App.2d 258, 29 Cal.Rptr. 384 (1963), mere weekend visits by the father were sufficient to meet the requirement of acceptance into the father's home, given actual paternity and public acknowledgment.

In Rodriguez v. Rodriguez, 329 F. Supp. 597 (N.D.Cal.1971), the Court said:

"With respect to a child born out of wedlock to an unmarried, single father, a clear public acknowledgment of paternity, plus the performance of such other acts as are reasonably sufficient under the circumstances of the particular case to constitute a 'treating [the child] as if it were a legitimate child', accomplishes a complete legitimation of the child. Such a child may be legitimated prior to its birth. Lavell v. Adoption Institute, 185 Cal.App.2d 557, 8 Cal.Rptr. 367 (1960). If the father, in addition to acknowledging the paternity, indicates an intention and desire to treat the child as his own, considering the circumstances, the requirements of the statute are satisfied and it is not essential that the father have and maintain a home and family into which the child is received. Estate of Abate, 166 Cal.App.2d 282, 333 P.2d 200 (1958); Darwin v. Ganger, 174 Cal.App.2d 63, 344 P.2d 353 (1959); Blythe v. Ayres, 96 Cal. 532, 31 P. 915 (1892); In re Jessup's Estate, 81 Cal. 408, 21 P. 976 (1889)."

In the *Rodriguez* case, the father was prevented from receiving the child into his family by the fact that he was in the

---

5. It is also true that a father may be living with or contributing to the support of an unborn child under 42 U.S.C. § 416(h)(3)

(C)(ii). Wagner v. Finch, 413 F.2d 267 (5th Cir. 1969).

United States Army on active duty in Viet Nam where he was killed.

The "circumstances" present in this case which prevented Moreno from doing more to recognize the child as his own were the requirements of the Sacramento Welfare Department. If we accept the Secretary's resolution of the conflicts in the evidence, under his view of the situation that obtained before Moreno's death, Moreno had legitimated his unborn son under California law. Thus the child applicant is an insured claimant under 42 U.S.C. § 416(h)(2)(A) and the defendant's motion for summary judgment should be denied and the plaintiff's motion should be granted.

The judgment of the District Court is reversed and the case remanded to the Secretary with instructions to grant the application for benefits.